JOHN AND PAULINE TONNINGSEN TRUST, BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99280.   Promulgated December 10, 1940.

*F. J. Kilmartin, Esq.,* and *J. W. Radil, Esq.,* for the petitioner.
*Harry R. Horrow, Esq.,* for the respondent.

40

OPINION.

OPPER: The first question is whether capital gains of the petitioner trust concededly allocable to corpus under California law were so "paid or permanently set aside" for charitable purposes as to be exempt from income tax under Revenue Act of 1934, section 162 (a).[1]

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

(a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23 (o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23 (o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit;

There is no contention that any amounts were actually paid, and the question arises by reason of provisions in the trust instrument granting to certain individuals such rights to income and possibly to principal as to cause the parties to disagree whether it can be said that the capital gains in question were permanently set aside for the use of the charities, so as to be beyond the reach of distribution to the individual beneficiaries and thus to comply with the requirements of section 162 (a).

A cognate question has arisen from time to time as to exemption from estate tax under Revenue Act of 1926, section 303 (a) (3), and similar provisions of other acts. See e. g. *Ithaca Trust Co.* v. *United States*, 279 U. S. 151. It is suggested that the tendency in considering such cases has been for the courts to ascertain as nearly as may be the extent to which a gift may reasonably be considered as destined for charitable purposes and to permit the exclusion of an estimated value thereof as the nearest approximation that can be made to a necessarily final result. See *Boston Safe Deposit & Trust Co.* v. *Commissioner* (C. C. A., 1st Cir.), 66 Fed. (2d) 179, 184; certiorari denied, 290 U. S. 700.

In cases dealing with income, however, where questions identical to that now before us were involved, a more rigorous approach has been adopted on occasion, and the deduction has been denied unless enjoyment by the charitable beneficiaries is shown to be almost certain and virtually inevitable. See e. g. *Bank of America National Association, Trustee*, 19 B. T. A. 1273; *Gertrude Hemler Tracy et al., Trustees*, 30 B. T. A. 1156; *Guaranty Trust Co. of New York, Executor*, 31 B. T. A. 19; *Old Colony Trust Co., Trustee*, 33 B. T. A. 311. But see *Helen G. Bonfils et al., Executors*, 40 B. T. A. 1079; affd. (C. C. A., 10th Cir.), 115 Fed. (2d) 788. See also *Union Trust Co. of Pittsburgh* v. *Commissioner* (C. C. A., 3d Cir.), 115 Fed. (2d) 86.

Whether or to what extent the two rules are in fact different, however, or which of them is more properly applicable to such a case as this, we find it unnecessary to decide. For even if we adopt the approach suggested by petitioner and endeavor to determine, on the basis of the probabilities as they existed in the years involved, the reasonable likelihood that these capital gains were protected from invasion in favor of the individual beneficiaries, we are forced to conclude that the weight of evidence is contrary to petitioner's contention. Likelihood that corpus would be devoted to noncharitable purposes appears from the most cogent of circumstances, the compelling logic of actual events. It is shown that in all the relevant years such large payments were made to the individual beneficiary that a substantial amount in each year was taken from the corpus.

And of course if it happened in one year there is the more reason for expecting a repetition. There is no indication that the years before us were exceptional or that the needs of the individual beneficiary were greater or the trust income less than could be anticipated in any typical period. It follows that petitioner has failed to show that the corpus, of which these capital gains became an indistinguishable part, was so protected from invasion as to enable us to say that they were permanently set aside for the benefit of the charities. The evidence indicates the contrary.

Petitioners contend that since this invasion of corpus had the consent of the remaindermen, the charitable institutions, it is no proof that the life tenant was within her legal rights in demanding the payments from corpus. This may or may not be true, since the consent of the beneficiaries in despite of their financial interest might well proceed from a recognition on their part that a litigated contest would result unfavorably to them. But, be that as it may, our question is "a factual one", *Helen G. Bonfils, supra;* not what were the legal rights of the parties but what were the actual probabilities. And if the consent of the remaindermen to the invasion of corpus was obtained in one year, there would be no reason to assume that it would not be forthcoming, as in fact it was, in the next. It is unnecessary to add that there were also individual remaindermen for the payment of whose specified shares corpus would have to be used. See *Bank of America National Association, Trustee, supra.* We conclude that the capital gains which were added to corpus in 1935 can not be said to have been paid or permanently set aside for charitable purposes.

For the year 1936 a different question arises. Payments of estate tax on the estate of the grantor of the trust and of attorneys' fees were made by petitioner, the former being charged to corpus. An amount equal to the income of the trust was paid as such to the charitable organizations, and is claimed as a deduction in the full amount under section 162 (a). It is respondent's position in disallowing that deduction that the payments of estate tax and attorneys' fees were actually payments out of income and to the extent thereof reduced the current income available for distribution to the charities, so that in effect what was paid to them was in reality not income but corpus and hence not deductible.

The deduction which is permitted is of "any part of the gross income, without limitation, which, pursuant to the terms of the will or deed creating the trust, is during the taxable year paid" for charitable purposes. If, as respondent contends, the parts of the gross income in question were not, pursuant to the deed creating the trust, paid to the charities, the deduction would not be available. The

issue, therefore, narrows to the question whether the trust instrument provided that the payments of estate taxes and attorneys' fees should be made from income or whether it directed that the income should be used for the payments to charity.

According to the deed of trust the payments to the charitable institutions were to be the net income "not required for any of the purposes aforesaid." This is provided by article VII (d). Article VII (a) requires the trustee "out of the income of the trust fund and estate, if that be sufficient, or out of the principal thereof, if necessary" to pay "the inheritance tax upon the distributive shares of or interests in the trust fund and estate, if any be due, and any Federal estate tax due upon the whole thereof and the costs and expenses of the trust."

These provisions appear to be so clear as to offer small room for construction. The income of the trust for the year 1936 was sufficient to pay the estate taxes and attorneys' fees in question. The trust deed requires that under those circumstances they be paid out of that income. It provides for the distribution to the charities of only the income not so required, thus precluding any distribution to them "pursuant to the terms of the will or deed creating the trust" of income which had already been used pursuant to those terms for other purposes. The deduction in question accordingly finds no support in section 162 (a). See *Old Colony Trust Co., Trustee, supra.*

It is not entirely clear whether the payment of attorneys' fees is also claimed as a deduction on the ground of ordinary and necessary business expense. Such a claim, if made, must be denied in the complete absence of any showing that the trust was engaged in a trade or business. *Deputy* v. *Dupont,* 308 U. S. 488; *White Trust* v. *Commissioner* (C. C. A., 3d Cir.), 119 Fed. (2d) 619.

The final issue involves the proposed imposition of a penalty for petitioner's failure to file a return. The question raised is whether omission to file Form 1040 covering taxable net income of the trust, although concededly Form 1041, the information return, was duly filed, subjects petitioner to the penalty imposed by section 291 of the Revenue Act of 1936.[2]

---

[2] SEC. 291. FAILURE TO FILE RETURN.

In case of any failure to make and file return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.

The penalty is for failure to file a return "required by this title." Section 142 entitled "Fiduciary Returns" requires "every fiduciary" to "make under oath a return for * * * (4) every estate or trust the net income of which for the taxable year is $1,000 or over; (5) every estate or trust the gross income of which for the taxable year is $5,000 or over." Nothing is said as to the form on which the return must be filed and there is no contention here that the respondent was not given all the necessary information on the form which the petitioner filed. Under the respondent's regulations[3] it is by no means clear that more than one return was required in the present case, nor on which form the income should be returned by the fiduciary. It is clear that a return on Form 1041 would be required if deductions were sought under sections 162 (b) or (c), but the deductions claimed by petitioner were those described in section 162 (a), a situation as to which the regulations are silent. Nor, on the theory of either party to this proceeding, would the case fall within the condition that a portion of the income is retained by the fiduciary and the remainder distributed, since on petitioner's theory none of the taxable income was retained and, on the respondent's, all. We are accordingly unable to say that the missing return was required by the specified title of the revenue act, even though its provisions be amplified by reference to respondent's regulations. That being so, the necessary prerequisite for the application of the penalty provision is absent. See *American Circus Joint Venture*, 39 B. T. A. 605. We do not purport to pass upon a case disclosing a failure to file a return clearly called for by the statute or even by respondent's regulations, whether or not that return is an additional return to one otherwise required. See *Collateral Mortgage & Investment Co.*, 37 B. T. A. 630; *Lone Pine Lawn Corporation*, 41 B. T. A. 638. Questions of that kind must be left open for determination on a record and under circumstances more favorable to respondent's contention than those appearing here.

*Decision will be entered under Rule 50.*

---

[3] ART. 142–1. *Fiduciary returns.*—Every fiduciary, or at least one of joint fiduciaries, must make a return of income—

* * * * * * *

(b) For the estate or trust for which he acts if the net income of such estate or trust is $1,000 or over, or if the gross income of the estate or trust is $5,000 or over, regardless of the amount of the net income, or if any beneficiary of such estate or trust is a nonresident alien.

The return in case (a) shall be on Form 1040 or 1040A. In case (b) a return is required on Form 1040 with respect to any taxable net income of the estate or trust computed in accordance with section 162 and a return on Form 1041 with respect to any income deducted under section 162 (b) or (c). If a portion of the income of the estate or trust is retained by the fiduciary and the remainder is distributable or distributed to beneficiaries, both Forms 1040 and 1041 will be required. * * *