W. K. Frank Trust of 1931, Robert J. Frank, Thomas W. Frank and James A. Frank, Co-Trustees v. Commissioner. Robert J. Frank Trust of 1931, Cecelia K. Frank, William K. Frank and Frank R. S. Kaplan, Co-Trustees v. Commissioner.
Frank Trust of 1931 v. Commissioner
Docket Nos. 296, 300.
United States Tax Court
1943 Tax Ct. Memo LEXIS 25; 2 T.C.M. (CCH) 1107; T.C.M. (RIA) 43516; December 17, 1943
*25 S. Leo Ruslander, Esq., First Nat. Bank Bldg., Pittsburgh, Pa., for the petitioners. Laurence F. Casey, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax for 1939 as follows: Docket
No.
Petitioner
Deficiency
296
W. K. Frank Trust of 1931,
Robert J. Frank, Thomas
W. Frank annd James A.
Frank, Co-Trustees
$2,798.58
300
Robert J. Frank Trust of 1931,
Cecelia K. Frank, William
K. Frank and Frank R. S.
Kaplan, Co-Trustees
381.01
The petitioners allege that the respondent erred in the determination of the deficiencies (1) by disallowing as deductions from the gross income of the trusts amounts equalling the market value of securities given to religious, charitable, and educational organizations, and (2) by failing to allow the deduction from gross income of expenses paid. The petitioners in Docket No. 300 further allege that the respondent erred in allowing a deduction from gross income of $18,750.20 as distributable income to Cecelia K. Frank, one of the beneficiaries, instead of $11,000, the amount actually distributed to her *26 during the taxable year. The respondent concedes that the trusts are entitled to deduct the expenses paid, namely, $422.64 in Docket No. 296 and $705.10 in Docket No. 300. In amended answers filed the respondent alleges that he erred in allowing the deduction from gross income of the cost basis to the trusts of securities given to religious, charitable, and educational organizations as follows: Docket No. 296
$1,277.09
Docket No. 300
162.02 He makes claim for additional deficiencies arising from the alleged errors. He also makes claim for an additional deficiency in Docket No. 300 if the Tax Court should find that the distributable income of the Robert J. Frank Trust of 1931 to Cecelia K. Frank, one of the beneficiaries, is in the amount of $11,000, rather than in the amount of $18,750.20, which the respondent allowed in the determination of the deficiency. The evidence of record consists of stipulations of fact and exhibits made a part of our findings of fact, supplemented by the testimony of one witness. Findings of Fact The petitioners are the trustees of two trusts created in 1931 by W. K. Frank and Robert J. Frank. The office of the trusts is in Pittsburgh, Pa., *27 and the trusts filed income tax returns for 1939 with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh. W. K. FRANK TRUST OF 1931 The W. K. Frank Trust of 1931 is an irrevocable trust created by W. K. Frank for the benefit of his wife and children by an indenture dated December 31, 1931. The trust instrument contained the following provision: VI. Anything hereinbefore to the contrary notwithstanding, said Trustees, by majority vote, shall have the right and power at any time and from time to time, in their own uncontrolled discretion, to make distribution of the principal of thus trust, in whole or in part, as well as of any or all undistributed income, to my wife or any of my children, or any of the other beneficiaries mentioned in Items II and III above; to vary or change and fix the share of the income and/or principal of, and the manner of paying the same to, any of the beneficiaries (including my wife) hereinabove mentioned, in such manner as they shall deem right and proper, or to eliminate entirely any of said beneficiaries from participation in the income and/or principal of the trust estate; and to choose beneficiaries, *28 whether they be individuals (excluding therefrom, however, the Donor) or organizations, associations, corporations or bodies maintained for religious, charitable, philanthropic, educational or other public uses and purposes, to participate in the income and/or principal of the trust estate at such time or times, for such term or terms, and in such manner, proportions, percentages, or amounts as they shall deem right and proper. The original corpus of this trust consisted of the entire capital stock of the W. K. Frank, Inc. On the day preceding the creation of the trust, W. K. Frank transferred 1,900 shares of the common capital stock of National Steel Corporation, together with other property, in exchange for the entire capital stock of W. K. Frank, Inc. During 1939 the petitioners made the following cash distributions of income: Florence K. Frank
$10,000
Thomas W. Frank
10,000
James A. Frank
10,000
Margaret Frank
10,000
The income tax return of the trust for 1939 showed a taxable net income of $19,315.28. This was after the deduction from gross income of the cash distributions of $40,000 and the fair market value ($14,322.50) of the gifts to charities. In his determination *29 of the deficiency in Docket No. 296 the respondent allowed as deductions from gross income the cost ($1,277.09) of the National Steel shares donated but disallowed the difference between that amount and $14,322.50, the fair market value. ROBERT J. FRANK TRUST OF 1931 The Robert J. Frank Trust of 1931 is an irrevocable trust created by Robert J. Frank for the benefit of his wife and children by a trust indenture dated December 31, 1931. On the preceding day, December 30, 1931, Robert J. Frank transferred 4,150 shares of common capital stock of National Steel Corporation, together with other property, to Robert J. Frank, Inc., in exchange for the entire capital stock of the corporation. The original corpus of the trust consisted of the entire capital stock of Robert J. Frank, Inc.
The trust indenture contained the following provisions: II. * * * (b) After deducting all expenses incident to the management of the trust, to pay over in convenient installments, at least quarterly, to my wife, CECELIA K. FRANK, fifty (50) per cent of the net income of this trust estate, subject, however, to all the provisions hereinafter contained. The balance of said net income, and the whole *30 net income of said trust estate after the death of CECELIA K. FRANK, shall be paid to my children, now living or hereafter born, in equal shares, for and during the full term of their natural lives, subject, however, to the provisions hereinafter contained. * * * * *
VI. Anything hereinbefore to the contrary notwithstanding, said Trustees, by majority vote, during the lifetime of Cecelia K. Frank only with her consent, whether or not she be acting as Trustee, shall have the right and power at any time and from time to time, in their own uncontrolled discretion, to make distribution of the principal of this trust, in whole or in part, as well as of any or all undistributed income, to my wife or any of my children, or any of the other beneficiaries mentioned in Items II or III above; to vary or change and fix the shares of the income and/or principal of, and the manner of paying the same to, any of the beneficiaries (including my wife) hereinbefore mentioned, in such manner as they shall deem right and proper, or to eliminate entirely any of said beneficiaries from participation in the income and/or principal of the trust estate; and to choose beneficiaries, whether they be individuals *31 (excluding therefrom, however, the Donor) or organization, associations, corporations or bodies maintained for religious, charitable, philanthropic, educational or other public uses and purposes, to participate in the income and/or principal of the trust estate at such time or times, for such term or terms, and in such manner, proportions, percentages or amounts as they shall deem right and proper. On or about December 1, 1938, petitioners received the above-referred to 4,150 shares of common stock of National Steel Corporation, together with other property, as a distribution in liquidation of Robert J. Frank, Inc., and surrendered in exchange the aforesaid shares of capital stock of that corporation. During 1939 the trust gave the following shares of National Steel Corporation stock received by it upon the liquidation of Robert J. Frank, Inc. to religious and educational organizations which were operated exclusively for religious and educational purposes, without benefit to any private stockholder or individual, as follows: No. of
Cost
Market
Organization
Shares
Basis
Value
Rodef Shalom Con-
gregation
68
$ 82.22
$ 5,542
Shady Side Acad-
emy
66
79.80
4,950
Totals
134
$162.02
$10,492
*32 The basis to the trust under section 113 (a)(18) of the Revenue Act of 1938 of the above-referred to shares of National Steel Corporation was $162.02 and their fair market value at the dates of the gifts was $10,492. The gifts to the organizations were made under resolutions of the trustees that the values of the shares at dates of distribution should be "charged against the income of the trust, authority for such action being given to the trustees of said trust in paragraph VI of the Deed of Trust." The gross income of the trust for 1939 was as follows: Cash dividends
$41,249.35
Net long term gain from ex-
change of capital assets
9,772.95
Total
$51,022.30
During 1939 the petitioners made the following cash distributions of income: Cecelia K. Frank
$11,000
Barbara Ann Frank
5,000
Joan Betty Frank
5,000
Allan I. W. Frank
5,000
The income tax return of the trust for 1939 showed net income of $10,781.35. This was after the deduction from gross income of the cash distributions of $26,000 and amounts equalling the market value of the shares of National Steel Corporation donated to the religious and educational organizations, namely, $10,492. In his determination *33 of the deficiency the respondent allowed the deductions of the gifts to the religious and educational organizations of the cost ($162.02) of the securities but disallowed the difference between that amount and their fair market value, $10,492. He further held that 50 percentum of the net income of the trust, which he determined to be in the amount of $37,500.40 constituted distributable income of Cecelia K. Frank since under the terms of the trust agreement she was entitled to receive 50 percentum of the net income; hence, he increased the deduction to Cecelia K. Frank from $11,000 to $18,750.20. Opinion The principal question presented by these proceedings is whether the trusts are entitled to deduct from the gross income of 1939 the value of the gifts which the trustees made to religious, charitable, and educational organizations. No question is raised but that the amounts claimed as deductions constitute legal deductions if they constitute "any part of the gross income" of the trusts for the taxable year. The position of the respondent is that the National Steel Corporation shares which were given to the charities constituted parts of the corpora of the trusts; and that gifts *34 out of the corpora of the trusts to charities are not legal deductions from gross income. In his determination of the deficiencies the respondent allowed the deduction from the gross income of the stipulated cost basis of the donated shares. The respondent by amended answers alleges that he was in error in so doing and that no part of the value of the gifts to the charities is a legal deduction from gross income. Section 162 of the Internal Revenue Code applicable for the year 1939 provides in material part as follows: SEC. 162. NET INCOME. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - (a) There shall be allowed as a deduction (in lieu of the deduction for charitable, etc., contributions authorized by section 23(o)) any part of the gross income, without limitation, which pursuant to the terms of the will or deed creating the trust is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty *35 to children or animals, or for the establishment, acquisition, maintenance or operation of a public cemetery not operated for profit. The respondent calls attention to the fact that this provision of the taxing statute is in lieu of section 23(o) I.R.C., which permits an individual to deduct from gross income contributions of gifts to charity not exceeding 15 percentum of the net income computed without the benefit of the subsection. He stresses the point that section 162(a) does not permit the deduction of the value of a gift from gross income but simply provides that the gift constituting "any part of the gross income" may be deducted. He submits that what was given to the charities by the trusts were not parts of the gross income but parts of the original contributed corpus of each trust. He therefore argues that it was not within the intendment of Congress to allow the deduction. It is entirely clear that if the trusts had sold the shares of National Steel Corporation which they contributed to the charities and realized the fair market values of the shares at the dates of the gifts they would have been subject to income tax upon the capital gains made. If out of such capital *36 gains they had contributed money, they would clearly have been entitled to deduct the amounts contributed up to the amounts of net income of the trusts. The question here is whether the same rule should apply where the trusts contributed not cash, but a part of the corpus of each trust. The language of section 162(a) with which we are here concerned first appeared in the Revenue Act of 1918. The Committee Reports are silent as to the intention of Congress in the interpretation of the language, except as follows: Report - Conference Committee (65th Cong., 3d Sess., H. Rept. 1037). - Amendment No. 94: This amendment allows, in the case of estates and trusts, a deduction for amounts which, pursuant to the terms of the will or deed creating the trust, are paid to or permanently set aside for religious, charitable, scientific or educational purposes, or for the prevention of cruelty to children or animals; and the House recedes with amendments making clerical changes and confining the deductions to amounts contributed to or permanently set aside for governmental purposes or corporations organized and operated exclusively for religious, charitable, scientific or educational purposes, *37 or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual. (p. 52.) In Old Colony Trust Co., Trustee v. Commissioner, 301 U.S. 379, the court had before it the question whether a trust was entitled to deduct from gross income payments to charities. On January 1, 1931, the income account showed an unexpended balance of $187,999.43. During 1931 the income received amounted to $164,339.39. The trustee expended and charged against income account $212,862.80, of which $190,000 went to charities. The 1931 tax return claimed deductions for charity payments up to the amount of the year's net income. The Board of Tax Appeals held that the trustee must affirmatively prove the payments in question were from income received during 1931; also, that except as to a small sum, it had not sustained the necessary burden of proof. The Supreme Court observed: Section 23(n) limits deductible contributions to 15 per cent. of net income. Section 162(a) permits them to the full extent of gross income. This language should be construed with the view of carrying out the purpose *38 of Congress - evidently the encouragement of donations by trust estates. There are no words limiting these to something actually paid from the year's income. And so to interpret the Act could seriously interfere with the beneficient purpose. * * * Capital and income accounts in the conduct of the business of estates are well understood. Congress sought to encourage donations out of gross income, and we find no reason for saying that it intended to limit the exemption to sums which the trust could show were actually paid out of receipts during a particular tax year. The design was to forego some possible revenue in order to promote aid to charity. Here the trustee responded to an implied invitation and the estate ought not to be burdened in consequence. Upon the basis of the foregoing opinion the petitioners argue that it is immaterial that the gifts to the charities were made out of the corpora of the trusts rather than out of income. We do not believe, however, that the above case stands for such a proposition. The Supreme Court was not there concerned with the question whether the gifts were made out of corpus or out of income. It was concerned only with the question whether they *39 were made out of particular receipts of income. The Revenue Act of 1918 and all subsequent acts have provided that gifts made by trusts to charities shall be deducted from gross income only where they constitute a "part of the gross income." We think that that language of the taxing act must be given effect in the instant proceeding. In John and Pauline Tonningsen Trust, Bank of America National Trust and Savings Association, Trustee, 43 B.T.A. 37, the trust, after setting aside certain capital gains for charities, had distributable net income of $28,392.66. During the taxable year it paid $15,616.24 in estate tax and $7,500 in attorney fees, and thereafter paid $17,178.44 to designated charities charging the latter against trust income. The Commissioner's denial of a deduction of the latter payments under section 162(a) on the ground that they were of corpus was sustained and on appeal the United States Circuit Court of Appeals for the Ninth Circuit affirmed. Bank of America National Trust & Savings Association v. Commissioner, 126 Fed. (2d) 48. Cf. Wellman v. Welch ( D. C. Mass.), 21 Fed. Supp. 978; *40 affd. (C.C.A., 1st Cir.), 99 Fed. (2d) 75. In the present proceedings it is clear that no part of the gifts to charities was made out of the gross income of the trusts. The entire gifts were made out of the corpora of the trusts. Not constituting "any part of the gross income" of the trusts they are not legal deductions therefrom. The respondent's claims for increases in the deficiencies arising from the erroneous allowance of deductions of the cost basis to the trusts are granted. In Docket No. 300 we have the further question whether the trust is entitled to the deduction of 50 percentum of the net income of the trust as distributable income to Cecelia K. Frank. For reasons which we have stated in a separate opinion in that case (Docket No. 299), we are of the opinion that the respondent did not err in his determination that the trust is entitled to deduct an amount equalling 50 per cent of the net income as distributable income to Cecelia K. Frank. Decisions will be entered under Rule 50.